August 3, 2020

**BY ECF**
The Honorable Jesse M. Furman
United States District Judge
Thurgood Marshall United States Courthouse
40 Foley Square
New York, New York 10007

> Re: *State of New York v. Trump*, No. 20 Civ. 5770 (JMF)
> *New York Immigration Coalition v. Trump*, No. 20 Civ. 5781 (JMF)

Dear Judge Furman:

This Office represents Defendants in the above-captioned matter. We write respectfully on behalf of all parties, to provide the parties' views on the issues set forth in the Court's July 28, 2020, order and to propose a briefing schedule in this matter. *See* ECF Nos. 24, 32. We summarize below the answers to the issues identified by the Court.

1) **whether and to what extent the two cases should be consolidated (pursuant to Rule 42 of the Federal Rules of Civil Procedure) or otherwise coordinated,** *see, e.g.*, **18-CV2921 (JMF), ECF No. 322 (Sept. 14, 2018) (formally consolidating 18-CV-2921 (JMF) and 18-CV-5025 (JMF));**

The parties agree that 20 Civ. 5770 and 20 Civ. 5781 should be consolidated pursuant to Fed. R. Civ. P. 42(a)(2).

2) **the status and relevance to these cases of** *State of Alabama v. U.S. Department of Commerce*, **18-cv-00772 (RDP) (N.D. Ala.);** *Common Cause v. Trump*, **20-CV-2023 (D.D.C.);** *Haitian-Americans United, Inc. v. Trump*, **20-CV-11421 (D. Mass.); and** *City of San Jose v. Trump*, **20-CV-5167 (N.D. Cal.), and whether or to what extent the Court should coordinate or communicate with the judges presiding over those cases;**

Plaintiffs: Plaintiffs are aware of five lawsuits that have been filed to date that challenge the Presidential Memorandum at issue in this lawsuit (in addition to the two actions before this Court), and are aware from public filings that a sixth such challenge is likely forthcoming:

- *California v. Trump*, 20-CV-5169 (Judge Chen) (N.D. Cal. filed July 28, 2020). No scheduling order has yet been entered. The defendants have not filed notices of appearance in this action.

- *City of San Jose v. Trump*, 20-CV-5167 (Judge Koh) (N.D. Cal. filed July 27, 2020). No scheduling order has yet been entered. On July 29, the plaintiffs in *California v. Trump* filed a motion to relate that case to *City of San Jose v. Trump*. On July 31, the *City of San Jose* plaintiffs filed their assent to that request. The

The Honorable Jesse M. Furman
August 3, 2020
Page 2

- *Common Cause v. Trump*, 20-CV-2023 (Judge Cooper) (D.D.C. filed July 23, 2020).  No scheduling order has yet been entered.  The defendants have not filed notices of appearance in this action.

- *Haitian-Americans United, Inc. v. Trump*, 20-CV-11421 (Judge Woodlock) (D. Mass. filed July 27, 2020).  No scheduling order has yet been entered.  The defendants have not filed notices of appearance in this action.

- *Useche v. Trump*, 20-CV-2225 (Judge Xinis) (D. Md. filed July 31, 2020).  No scheduling order has yet been entered.  The defendants have not filed notices of appearance in this action.

- *La Unión del Pueblo Entero v. Ross*, 19-CV-2710 (Judge Xinis) (D. Md. filed Sept. 13, 2019).  *LUPE v. Ross* is a challenge to Executive Order 13,880, *Collecting Information About Citizenship Status in Connection with the Decennial Census*, and Secretary Ross's directive to the Census Bureau to collect and produce Citizenship Voting Age Population (CVAP) information that states may use in redistricting.  Am. Complaint ¶¶ 1-5, 88-117 (alleging claims for relief under the Administrative Procedure Act, the Fifth Amendment due process clause, and 42 U.S.C. § 1985).  At a July 22, 2020 hearing on the defendants' motion to dismiss, the Court denied the motion as moot and without prejudice, granted the plaintiffs' request for leave to amend their complaint to challenge the Presidential Memorandum, and directed the plaintiffs to file their Second Amended Complaint by August 12, 2020.  *See* Order, 19-CV-2710, ECF No. 95 (D. Md. July 22, 2020).

These actions do not affect this Court's ability to adjudicate this case.[1]

2.  In *State of Alabama v. U.S. Department of Commerce*, 18-CV-00772 (RDP) (N.D. Ala. filed May 21, 2018), plaintiffs the State of Alabama and Congressman Mo Brooks ("Alabama") sued the Commerce Department, the Secretary of Commerce, the Census Bureau, and the Director of the Census Bureau, challenging the *Final 2020 Census Residence Criteria and Residence Situations* (the "Residence Rule"), 83 Fed. Reg. 5525, 5526 (Feb. 8, 2018), on constitutional and APA grounds.  *See* First Am. Compl. for Declaratory Relief, 18-CV-772, ECF No. 112 (N.D. Ala. filed Sept. 10, 2019).  The Residence Rule is used to "determine where

---

[1] Defendants are currently operating under instructions from the Attorney General to "remind courts of the utility of multiple lower court decisions on a contested legal issue."  Memorandum from the Attorney General, *Litigation Guidelines for Cases Presenting the Possibility of Nationwide Injunctions* 4 (Sept. 13, 2018), https://www.justice.gov/opa/press-release/file/1093881/download.

The Honorable Jesse M. Furman
August 3, 2020
Page 3

people are counted during each decennial census." 83 Fed. Reg. at 5526. As relevant to Alabama's challenge, the Residence Rule requires that citizens of foreign countries living in the United States be counted "at the U.S. residence where they live and sleep most of the time," without regard for their immigration status. *Id.* at 5533 (Section C.3); *see also id.* at 5530. Three separate groups of intervenors have intervened as defendants in the *Alabama* action.[2]

On June 5, 2019, the district court denied the defendants' motion to dismiss. *Alabama v. U.S. Dep't of Commerce*, 396 F. Supp. 3d 1044 (N.D. Ala. 2019). The case is currently in discovery on jurisdictional issues. *See* ECF No. 147 (second amended scheduling order). Jurisdictional discovery is due to conclude by September 23, 2020, and dispositive motions are due by October 21, 2020.[3] *See id.*

On July 21, 2020, the defendants notified the district court of the Presidential Memorandum at issue in this case. ECF No. 152. The district court directed the parties to file simultaneous briefs by August 3, 2020 regarding "the effect, if any, that the President's June 21, 2020 Memorandum may have on the claims asserted in this case," and to respond to the other parties' initial filings by August 10, 2020. ECF No. 153. As of the time this joint letter was finalized, the parties in the *Alabama* action had not filed these notices.

*3.* Plaintiffs do not currently believe any coordination with any of these other cases is necessary. No case has yet set a scheduling order to brief the merits of any challenge to the Presidential Memorandum at issue here. To the extent fact discovery becomes necessary in this litigation, Plaintiffs anticipate working with plaintiffs' counsel in the other cases to propose coordination procedures to minimize duplicative discovery and reduce the burden on Defendants, as the parties agreed to and the Court ordered in the citizenship question litigation. *See* 18-CV-2921, ECF Nos. 221, 224. Plaintiffs do not oppose communication between this Court and the judges presiding over the other cases.

Defendants: Defendants believe that to a significant degree these cases cover largely the same issue, *i.e.*, the validity of the July 21, 2020, Presidential Memorandum ("PM"). Defendants

---

[2] The "Martinez Intervenors" are individual voters and the nonprofit organization Chicanos Por La Causa. The "Local Government Intervenors" are five local governments. The "State and Other Intervenors" are 16 states, 9 cities and counties, and the United States Conference of Mayors. Of the 26 "State and Other Intervenors" in the *Alabama* action, 25 are among the 39 plaintiffs before this Court in *New York v. Trump*, 20-CV-5770.

[3] The Martinez Intervenors in the *Alabama* action have asserted a cross-claim arguing that "[i]f Defendants were to decide to exclude undocumented immigrants from the enumeration reported to Congress for the purpose of apportioning Representatives and electors to the Electoral College," it would violate Article I and Section 2 of the Fourteenth Amendment. *See* Martinez Intervenors' Cross-Claim Against Defendants ¶¶ 50, 54-58, 18-CV-772, ECF No. 119 (N.D. Ala. Oct. 1, 2019). None of the Plaintiffs in *NYIC v. Trump*, 20-CV-5781, are parties to the *Alabama* action; and none of the Plaintiffs in *New York v. Trump*, 20-CV-5770, joined the Martinez Intervenors' cross-claim in the *Alabama* action.

The Honorable Jesse M. Furman
August 3, 2020
Page 4

encourage the Court to communicate and coordinate with the judges presiding over the other cases.

**3)   whether there is a date by which the issues in these cases need to be resolved and, if so, what that date is;**

Plaintiffs: To redress Plaintiffs' apportionment harms, this dispute must be finally resolved by the end of 2020.  Under 2 U.S.C. § 2a, the President must transmit to Congress a statement showing both (i) "the whole number of persons in each State . . . as ascertained under the . . . decennial census of the population" and (ii) "the number of Representatives to which each State would be entitled" by "the first day, or within one week thereafter, of the first regular session" of Congress, which will take place in the first few days of January 2021.  *Id.* § 2a(a). Each State is then "entitled . . . to the number of Representatives shown in the statement" for the next Congress.  *Id.* § 2a(b).  The issues in this case thus must be resolved *at latest* before the President transmits his statement and affects the States' apportionment.

Given the near certainty of an appeal, this Court will likely have to issue a decision several months earlier.  We believe a decision by early September 2020 would build in sufficient time for appellate review, based on the expedited appeal schedule that followed this Court's earlier ruling on defendants' attempt to add a citizenship question to the census.   In that litigation, this Court issued its decision on January 15, 2019; the Supreme Court granted a writ of certiorari before judgment on February 15; the case was fully briefed and argued by April 23; and the Supreme Court issued its decision on June 27.  We believe that the 98 days between this Court's prior ruling and oral argument could serve as a benchmark here for the amount of time it will take for any appeal in this litigation to be fully submitted and resolved on expedited appeal.

*2.*   The harms that Plaintiffs are facing to the ongoing enumeration will also require expedited resolution.   As Plaintiffs have alleged, Defendants' actions are already deterring participation in the ongoing decennial census and undermining the Census Bureau's efforts to count immigrants and their families. Those harms must be stopped as soon as possible, so that the Census Bureau has time to complete an accurate enumeration without the impediments created by defendants' actions.  "[W]ait[ing] until the census has been conducted to consider the issues presented here . . . would result in extreme—possibly irremediable—hardship" to the completion of the Enumeration.  *Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 332 (1999).

Unfortunately, Defendants' own actions have sharply limited the amount of time in which this Court can grant meaningful relief to redress these harms.  Defendants chose to wait more than a year after the conclusion of the citizenship question litigation, and on the eve of the commencement of Non-Response Follow-Up operations, to issue the Memorandum.   And although the Bureau had announced in April that it would conduct Non-Response Follow-Up (NRFU) operations through October 31, recent press reports indicate that the Bureau will now end NRFU by September 30.  *See* Hansi Lo Wang, *Census Door Knocking Cut a Month Short Amid Pressure to Finish Count*, NPR (July 30, 2020), https://www.npr.org/2020/07/30/896656747/when-does-census-counting-end-bureau-sends-

The Honorable Jesse M. Furman
August 3, 2020
Page 5

alarming-mixed-signals.  In order to preserve some amount of time for NRFU operations to be conducted without the deterrent effect of Defendants' recent actions, including the Presidential Memorandum, Plaintiffs respectfully request a ruling from this Court by as early in September as possible.

Defendants:   There is no extreme time urgency to deciding this matter.   More specifically, there is no need to resolve this lawsuit before the submission of the enumeration numbers to the President.  Unlike in the citizenship question cases, Plaintiffs are not challenging some procedure that will be used in the actual census, but an apportionment number that will be chosen by the President after the census is complete.  And their requested relief has nothing to do with any census procedures.

The July 21, 2020, PM at issue in this litigation asks the Secretary to send the President two options: (1) enumeration under the Residence Criteria, 83 Fed. Reg. 5525 (Feb. 8, 2018), and (2) enumeration excluding undocumented immigrants.  The PM requested the second option to the "maximum extent feasible" and to "the extent practicable."  The Census Bureau is still evaluating the usability of administrative records pertaining to citizenship status in connection with the decennial Census and formulating a methodology for potentially excluding undocumented immigrants.  As stated in the *New York Immigration Coalition, et al.*'s Complaint in 20 Civ. 5781, the Government recently represented in other litigation that it currently "lack[s] . . . accurate estimates of the resident undocumented population" on a state-by-state basis.  Therefore, it is far from clear the extent to which it will be feasible for the Secretary to report an enumeration excluding undocumented immigrants.  In addition, if the Secretary reports a number excluding some undocumented immigrants and if the President chose that number, the effect on the number of representatives for any state is currently unknown and speculative.  Further, there is no support for Plaintiffs' assertion that the PM will have any adverse effect on responses to the Census, which in any event, is nearly complete.

Indeed, the default is that census and apportionment cases are decided post-apportionment when census enumeration procedures are not at issue.  *See, e.g.*, *Franklin v. Massachusetts*, 505 U.S. 788, 79-91 (1992); *Dep't of Commerce v. Montana*, 503 U.S. 445-46 (1992); *Utah v. Evans*, 536 U.S. 452, 458 (2002); *Wisconsin v. City of New York*, 517 U.S. 1 (1996).

In the instant litigation, a decision would be optimal with sufficient time to reach the Supreme Court—and, if necessary, for relief to be effectuated—before the 2022 elections.  Therefore, if the Court decided the case soon after the President sent the enumeration and apportionment to Congress in January 2021 (or later, if Congress responds to the Census Bureau's request for an extension to complete the 2020 Census), that should provide more than enough time for any relief the Court ordered to be effectuated.  In the event the Court reversed any decision to exclude undocumented immigrants, the relief could simply involve apportionment based on enumeration under the Residence Criteria—the first option that the Secretary will have already reported to the President.

The Honorable Jesse M. Furman
August 3, 2020
Page 6

4) **whether Plaintiffs anticipate moving for preliminary relief and, if so, when and on what grounds;**

Plaintiffs intend to file a motion for partial summary judgment or, in the alternative, for preliminary injunctive relief on August 7. The motion will address plaintiffs' claims under Article I and Section 2 of the Fourteenth Amendment; the equal protection guarantee of the Fifth Amendment's due process clause; and the Census Act, potentially among other claims.

5) **whether Defendants anticipate moving to dismiss one or both cases and, if so, on what grounds;**

Defendants anticipate moving to dismiss under Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The bases for the motion may include lack of ripeness, standing, and final agency action; failure to state certain claims; and that a claim may not properly be brought against the President.

6) **whether there are threshold issues — such as standing, ripeness, or (for claims under the Administrative Procedure Act) the existence of final agency action — that should be addressed and, if so, when and how they should be raised and addressed;**

<u>Plaintiffs</u>: This Court's prior ruling on plaintiffs' standing in the earlier litigation involving the citizenship question, which the Supreme Court affirmed, resolves Plaintiffs' standing to bring this related challenge. In particular, exclusion of undocumented immigrants from the apportionment base will cause Plaintiffs or the jurisdictions in which Plaintiffs operate to lose seats in the House of Representatives. Such a loss "undoubtedly satisfies the injury-in-fact requirement of Article III standing." *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 626 (S.D.N.Y. 2019) (quotation marks omitted); *see also Dep't of Commerce v. U.S. House of Representatives*, 525 U.S. 316, 330 (1999) (holding that the plaintiffs demonstrated standing for purposes of summary judgment by submitting an expert affidavit showing that "it is a virtual certainty that Indiana will lose a seat . . . under the Department's Plan"). In addition, Defendants' announcement of their decision to exclude undocumented immigrants from the apportionment count will deter immigrants and their families from responding to the decennial census. This Court previously found that an undercount due to similar deterrent effect will cause "a loss of funding from federal programs" that is "a classic form of Article III injury in fact." *Id.* at 608. And the nongovernmental plaintiffs here will suffer further injury from being forced "to divert organizational resources away from their core missions and towards combating the negative effects" of defendants' actions. *Id.* at 616.

All of these injuries are traceable to Defendants' recent actions and redressable by a favorable ruling from this Court. There is no question that the exclusion of undocumented immigrants from the apportionment base will *directly* affect the apportionment (which the Presidential Memorandum itself both acknowledges and intends, *see* 85 Fed. Reg. at 44,680). Moreover, this Court previously found—and the Supreme Court agreed—that the predictable effects of defendants' actions on the accuracy of the ongoing enumeration are sufficient to

The Honorable Jesse M. Furman
August 3, 2020
Page 7

establish traceability.  *New York*, 351 F. Supp. 3d at 619-25.  And all of these injuries will plainly be redressed by a favorable ruling that requires defendants to do what the Constitution mandates: "counting the whole number of persons in each State."  U.S. Const. amend. XIV, § 2.

   *2.*  This Court also need not address ripeness for Plaintiffs' claims under Article I and Section 2 of the Fourteenth Amendment because these constitutional claims are plainly ripe for review.  The Presidential Memorandum makes clear that the decision to exclude undocumented immigrants from the apportionment base has already been made: the Memorandum not only announces that policy but directs the Secretary of Commerce to help "carry out the policy" by providing a count of the number of undocumented immigrants in each State.  *See Glavin v. Clinton*, 19 F. Supp. 2d 543, 547-48 (E.D. Va. 1998) ("Given the finality of the Department's decision to utilize statistical sampling as a means to determining the population for the purposes of congressional apportionment in Census 2000, it is clear that ripeness concerns have no application in the instant case.").

   Although the President's statement to Congress will not be submitted until early January 2021, it is well-settled that ripeness can be satisfied if future injury is "certainly impending, or there is a substantial risk that the harm will occur."  *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quotation marks omitted).  "[T]he threat of vote dilution" from an improper apportionment "is concrete and actual or imminent, not conjectural or hypothetical. . . .  And it is certainly not necessary for this Court to wait until the census has been conducted to consider the issues presented here."  *U.S. House of Representatives*, 525 U.S. at 332.  No further factual or administrative development is necessary before this Court can resolve the purely legal issue of whether Defendants' decision and actions violate Article I and Section 2 of the Fourteenth Amendment.  *See NRDC v. U.S. E.P.A.*, 859 F.2d 156, 168 (D.C. Cir. 1988) ("Given the purely legal character of the claim and the apparent certainty that it will arise in the future, we think the institutional concerns underlying ripeness militate in favor of immediate resolution.").

   More importantly, "time is of the essence," and "[d]elayed review would cause hardship to Plaintiffs."  *New York*, 351 F. Supp. 3d at 502.  Defendants' actions are currently impairing the Census Bureau's ability to conduct an accurate enumeration, and Defendants' sudden and unilateral decision to shorten the time for NRFU operations by a month makes it even more pressing for this Court to rule.  Time is also of the essence because waiting until Defendants actually alter the apportionment in January 2021 by excluding undocumented immigrants will only create confusion and disruption, particularly because Plaintiffs will begin the lengthy and complex redistricting process soon after the apportionment and cannot meaningfully engage in that process without knowing how many seats they will have in the House of Representatives. There is no reason to invite such chaos when Defendants' decision to exclude undocumented immigrants from the apportionment base is "certain to occur by a clearly determinable time in the near (if not immediate) future."  *Chem. Waste Mgmt., Inc. v. EPA*, 869 F.2d 1526, 1534 (D.C. Cir. 1989).  "[T]he hardship to the parties of withholding court consideration" thus weighs heavily in favor of deeming this dispute to be ripe.  *Abbott Labs. v. Gardner*, 387 U.S. 136, 148-49 (1977).

The Honorable Jesse M. Furman
August 3, 2020
Page 8

*3.* To the extent the Court concludes that briefing is needed to address any ripeness or standing issues related to Plaintiffs' claims under Article I and Section 2 of the Fourteenth Amendment, the parties should address those issues simultaneously with the briefing of Plaintiffs' forthcoming motion for partial summary judgment and a preliminary injunction (as Plaintiffs propose in response to Question 8 below).  Addressing these questions in separate, antecedent briefing on a motion to dismiss would delay adjudication in a way that would severely prejudice Plaintiffs and the public.

Defendants: In Defendants' view, there are threshold issues that need to be addressed pertaining to standing, ripeness, and the existence of final agency action under the Administrative Procedure Act.  As noted above, Defendants propose raising these issues in a motion dismiss and would also raise them in opposition to Plaintiffs' summary judgment and preliminary injunction motion.

7) **what effect, if any, the record in *State of New York v. U.S. Department of Commerce*, 18-CV-2921 (JMF), should have on these cases, including but not limited to whether the record, either now or later and either in whole or in part, should be deemed to be part of the record in these cases (e.g., with respect to standing);**

Plaintiffs: Plaintiffs believe the record in *State of New York v. U.S. Department of Commerce*, 18-CV-2921 (JMF), should be deemed to be part of the record in these cases.  The factual record regarding the plaintiffs' injury in 18-CV-2921 largely or entirely resolves standing in these actions, to the extent Defendants raise it.  The factual record regarding the decision to add a citizenship question to the census bears on Plaintiffs' allegations here that the decision to exclude undocumented immigrants from the apportionment count is connected to and motivated by the same factors as the decision to add a citizenship question.  *New York* Am. Compl. ¶¶ 87-107, 20-CV-5770, ECF No. 34; *NYIC* Compl. ¶¶ 10-11, 113-29, 135, 20-CV-5781, ECF No. 1.  And the factual record that the Court considered in 18-CV-2921 as part of its decision to impose sanctions on the defendants following entry of final judgment bears on the NYIC Plaintiffs' allegations here that Defendants' intent is to minimize Hispanic political power by excluding them from the census through any means available.  *NYIC* Compl. ¶¶ 115-17, 20-CV-5781, ECF No. 1.

Courts routinely take judicial notice of the evidence in the record of a prior case between the same parties.  *See, e.g.*, *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 157 & n.6 (1969) ("[W]e may properly take judicial notice of the record in that litigation between the same parties who are now before us.") (citing *Nat'l Fire Ins. Co. v. Thompson*, 281 U.S. 331, 336 (1930)).  Doing so will facilitate the litigation of this time-sensitive matter and will cause no prejudice to Defendants, who vigorously litigated these factual issues through a bench trial less than two years ago.  *Cf. Shuttlesworth*, 394 U.S. at 157 ("The petitioner here was one of the petitioners in the *Walker* case, in which, just two Terms ago, we had before us a record showing many of the 'surrounding relevant circumstances' of the Good Friday march.") (citing *Walker v. City of Birmingham*, 388 U.S. 307 (1967)).

The Honorable Jesse M. Furman
August 3, 2020
Page 9

During the parties' meet-and-confer for the preparation of this joint letter, Defendants took the position that the record from 18-CV-2921 should not be deemed part of the record in these cases because, according to Defendants, these cases are not related.  The President's public remarks on multiple occasions show otherwise.  On July 11, 2019, two weeks after the Supreme Court affirmed this Court's decision in 18-CV-2921, the President issued an Executive Order to "ensure that accurate citizenship data is compiled in connection with the census," and announced at a Rose Garden press conference that the Executive Order showed he was not "backing down on our effort to determine the citizenship status of the United States population."  *New York* Am. Compl. ¶¶ 94-97, 20-CV-5770, ECF No. 34; *see also* NYIC Compl. ¶¶ 121-22, 20-CV-5781, ECF No. 1.  And in issuing the Presidential Memorandum at issue here, the President stated: "Last summer in the Rose Garden, I told the American people that I would not back down in my effort to determine the citizenship status of the United States population.  Today, I am following through on that commitment by directing the Secretary of Commerce to exclude illegal aliens from the apportionment base following the 2020 census."  Statement from the President Regarding Apportionment (July 21, 2020), https://www.whitehouse.gov/briefings-statements/statement-president-regarding-apportionment/; *see also New York* Am. Compl. ¶¶ 98, 106-07, 20-CV-5770, ECF No. 34; *NYIC* Compl. ¶ 11, 20-CV-5781, ECF No. 1.

Defendants: The record in *State of New York v. U.S. Department of Commerce*, 18-CV-2921 (JMF), should not be deemed to be part of the record in the instant litigations.  The record in *State of New York v. U.S. Department of Commerce*, 18-CV-2921 (JMF), a closed case that concerned the Secretary of Commerce's decision to add a citizenship question on the 2020 Census, should have no effect on this case.  These two new lawsuits present challenges distinct from the issues that were raised and litigated in the closed case.  In short, these new cases raise constitutional claims regarding the President's July 21, 2020, memorandum on how to conduct apportionment following the 2020 census—they do not concern the 2020 Census questionnaire or the procedures for conducting the 2020 Census.  Accordingly, the new cases will require the Court to resolve different factual questions and legal issues.

The present litigations concern a different decision by a different decisionmaker for different stated reason than the citizenship-question case.  The citizenship-question litigation concerned the Secretary of Commerce's March 2018 decision to add a citizenship question on the 2020 Census, and the litigation occurred before the 2020 Census commenced.  It concerned how the citizenship-question would affect the accuracy of the enumeration. The Secretary was the only one with statutory authority to include a citizenship question on the census questionnaire.  13 U.S.C. § 141.

By contrast, this case concerns the President's July 2020 memorandum on how to use census data for apportionment, which was issued after the 2020 Census was already nearly two-thirds complete.   The PM asks the Secretary to report two numbers: (1) the enumeration based on total population, and (2) the enumeration excluding undocumented individuals "to the extent practicable."  The Census Bureau is conducting a complete enumeration of the total population and nothing in the PM alters that counting process.   The President, not the Secretary of Commerce, is the only one with statutory authority to settle apportionment. *See Franklin v. Massachusetts*, 505 U.S. 788, 799 (1992) (holding that "it is the President's personal transmittal

The Honorable Jesse M. Furman
August 3, 2020
Page 10

of the report to Congress that settles the apportionment" and that "the President, not the Secretary [of Commerce], takes the final action that affects the States").

Finally, any relief ordered in this case would be different than the relief ordered in the citizenship-question case. The Court's prior order prohibited the use of a citizenship question on the 2020 Census. Any relief ordered in the new cases would have nothing to do with a citizenship question. *Cf. LUPE v. Ross*, 19 Civ. 2710, 2019 WL 6035604, at *3 (D. Md. Nov. 13, 2019) (in context of finding citizenship case and case challenging Executive Order 13800 unrelated, stating: "Although Plaintiffs contend that the predicate events for these two cases are part of a larger conspiracy, this requires the Court to view the cases at a high level of generality. In actuality, this case would require the Court to evaluate a different administrative record, resolve different factual questions regarding the intent behind [the presidential and secretarial actions at issue], and eventually, if Plaintiffs succeed, order different relief.").

8)   **(a) whether any of Plaintiffs' claims can be litigated on the basis of stipulated facts and/or without discovery (or with minimal discovery) and without the production of an Administrative Record; (b) if so, whether such claims should be handled on a separate, faster track from claims that would require either or both the production of an Administrative Record or discovery; and (c) if so, the most efficient means to present those claims for resolution by the Court (e.g., a motion for preliminary injunction, a motion for summary judgment, or a bench trial on stipulated facts);**

Plaintiffs: Plaintiffs' claims under Article I and Section 2 of the Fourteenth Amendment and the Census Act, and potentially other claims, can be resolved on summary judgment without discovery and without production of an Administrative Record. Discovery and an Administrative Record likewise are not necessary to resolve Plaintiffs' alternative request for preliminary injunctive relief based on their intentional discrimination claims under the equal protection guarantee of the Fifth Amendment's due process clause. Plaintiffs propose that the most efficient means to present those claims for resolution by the Court is on their forthcoming motion for partial summary judgment or, in the alternative, for preliminary injunction.

Given the exigencies presented by this case, Plaintiffs propose the following briefing schedule for this motion: Plaintiffs shall file their motion by August 7, 2020. Defendants shall file any opposition by August 17, 2020. Plaintiffs shall file their reply by August 24, 2020.

Plaintiffs understand that Defendants intend to move to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Plaintiffs propose that Defendants' motion shall be briefed on the same schedule as Plaintiffs' motion for summary judgment or preliminary injunction—that is, Defendants shall file any motion to dismiss by August 7, 2020; Plaintiffs shall file their opposition by August 17, 2020; and Defendants shall file their reply by August 24, 2020.

Defendants: Defendants believe that this case should be dismissed on jurisdictional grounds. There is currently no administrative record because there is no final agency action and this case does not involve the Administrative Procedure Act. The only action that has been taken was action by the President directing the Secretary of Commerce concerning information that

The Honorable Jesse M. Furman
August 3, 2020
Page 11

should be provided to the President in a report due at the end of this year.  If the Court were to decide the case after apportionment, there will be no administrative record because the President is not an agency under the Administrative Procedure Act.  Cross-motions for summary judgment could be filed soon after apportionment is reported to Congress.

Defendants propose the following briefing schedule:

- Plaintiffs' motion: August 7, 2020

- Defendant's opposition/motion to dismiss: August 28, 2020

- Plaintiffs' reply: September 4, 2020

- Defendants' reply: September 11, 2020

For the reasons described in response to question 3, Defendants believe that this schedule is reasonable.  Specifically, given that the arguments made in each parties' affirmative briefs will likely be similar to the arguments made in their responsive briefs Defendants' proposal for staggered briefing with a total of 4 briefs is more efficient than Plaintiffs' proposal of 6 briefs and would help the Court and the parties to avoid a significant amount of repetitive and redundant briefing.

Further, Defendants are unable, as Plaintiffs propose, to file a motion to dismiss by Friday.  Plaintiffs' proposal is particularly unreasonable given that Plaintiffs just amended their complaint this morning.  In addition, Defendants think it is illogical to afford only 10 days for responsive briefs, while giving 7 days for reply briefs, as Plaintiffs propose.

9) **to the extent that discovery is appropriate for any of Plaintiffs' claims, the nature and extent of such discovery — including whether there is any anticipated need for motion practice (e.g., with respect to depositions of high-ranking officials) — and how such discovery should be handled in light of the COVID-19 pandemic**

Plaintiffs: Because Plaintiffs believe these cases can be resolved on their forthcoming motion for partial summary judgment, Plaintiffs believe a discovery schedule is premature at this point.  To the extent the Court does not resolve these matters on Plaintiffs' forthcoming motion, discovery will likely be necessary on (at least) Plaintiffs' intentional discrimination claims, and Plaintiffs propose that the parties confer and present a discovery schedule to the Court at that point if necessary.  With respect to depositions of high-ranking officials, because the operative test requires showing either that "the official has unique first-hand knowledge related to the litigated claims or that the necessary information cannot be obtained through other, less burdensome or intrusive means," *Lederman v. N.Y. City Dep't of Parks & Recreation*, 731 F.3d 199, 203 (2d Cir. 2013), Plaintiffs believe this question should be addressed following additional fact development if necessary.

The Honorable Jesse M. Furman
August 3, 2020
Page 12

> Defendants: While Defendants do not agree that any discovery will be necessary, the parties agree that the issue of what, if any, discovery will be needed should be deferred until after the Court decides the parties' motions.

**10) any other information that the parties believe may assist the Court in advancing the case to resolution, including, but not limited to, a description of any dispositive issue or novel issue raised by the case; and**

> Plaintiffs: Plaintiffs bring the Court's attention to the Three-Judge Court Act, which provides that "[a] district court of three judges shall be convened when otherwise required by Act of Congress, or when an action is filed challenging the constitutionality of the apportionment of congressional districts or the apportionment of any statewide legislative body." 28 U.S.C. § 2284(a). Plaintiffs do not believe § 2284(a) applies—and these cases are properly adjudicated by a single district judge—because these cases do not present challenges to any apportionment of congressional districts; instead, Plaintiffs challenge the unlawful decision to exclude undocumented immigrants from the population count to be used for the apportionment of Representatives in Congress. *See id.*; *see also Fed'n for Am. Immigration Reform v. Klutznick*, 486 F. Supp. 564, 577-78 (D.D.C. 1980) (three-judge court) ("[W]e have concluded that the issue is most likely one for a single district judge," because "[h]ere the challenge is to census practices which will produce data on which the apportionment of House of Representative members to states will be based, not to any state action reapportioning congressional districts.").

> The Second Circuit has held that 28 U.S.C. § 2284 is jurisdictional, and that "[w]hen a single district court judge improperly adjudicates a case required to be heard by a three-judge court, a court of appeals normally lacks jurisdiction over the merits and is limited to deciding whether the district court erred by not referring the case to a three-judge court." *Karlson v. Paterson*, 542 F.3d 281, 286-87 (2d Cir. 2008). Plaintiffs therefore raise this question for the Court's attention in the event the Court would like further briefing on this question now.

> Defendants: It would be novel for a Court to decide an apportionment case before the Census has been completed or before apportionment has occurred. In establishing a briefing schedule, Defendants respectfully suggest that the Court should also consider that Defendants will need to coordinate the review of their papers through different Government components, and should allow sufficient time to permit that process to occur.

> Plaintiffs allege constitutional violations relating to the apportionment of congressional districts. *See* NYS Am. Compl. ¶ 4 (asserting that the PM is "open disregard" of a "constitutional mandate to base apportionment on the 'whole number of persons in each State'"); *see also id.* ¶¶ 56-80 (discussing the constitutional apportionment requirement for congressional districts). Accordingly, to the extent that this case proceeds beyond the jurisdictional and justiciability questions to the merits, Defendants anticipate requesting the convening of a the three-judge court pursuant to 28 U.S.C. § 2284. *Id.* (providing that that a three-judge court "*shall* be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts. . . . .") (emphasis added); *see Shapiro v. McManus*, 136 S. Ct. 450, 455 (2015) (recognizing that a "three-judge court is not required where the district

The Honorable Jesse M. Furman
August 3, 2020
Page 13

court lacks jurisdiction of the complaint or the complaint is not justiciable in the federal courts"). Section 2284(b)(3) also prohibits a single judge from alone deciding a preliminary injunction motion, which could affect the timing of the schedule proposed below, in the event Defendants' threshold jurisdictional arguments are rejected.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney for the
Southern District of New York

By:    /s/ Allison M. Rovner
JEFFREY OESTERICHER
ALLISON M. ROVNER
Assistant United States Attorneys
86 Chambers Street, Third Floor
New York, New York 10007
Tel.: (212) 637-2695/2691
Email: Jeffrey.Oestericher@usdoj.gov
       Allison.Rovner@usdoj.gov

cc:     Counsel of Record (by ECF)